DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
SARA J. EISENBERG, SBN 269303
Chief of Complex & Affirmative Litigation
DAVID S. LOUK, SBN 304654
ESTIE M. KUS, SBN 239523
Deputy City Attorneys
Fox Plaza
1390 Market St., 6th Fl.
San Francisco, CA 94102-4682
Telephone:     (415) 355-0844 (Louk)
                    (415) 554-3924 (Kus)
Facsimile:     (415) 437-4644
E-Mail:         david.louk@sfcityatty.org
                    estie.kus@sfcityatty.org

ANDREW C. SILTON *(pro hac vice)*
JOSHUA H. VAN EATON *(pro hac vice)*
Beveridge & Diamond P.C.
1900 N Street N.W., Ste. 100
Washington, D.C. 20036
Telephone:     (202) 789-6000
E-Mail:         asilton@bdlaw.com
                    jvaneaton@bdlaw.com

*Attorneys for Defendant*
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and PEOPLE OF THE STATE OF CALIFORNIA by and through CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, SAN FRANCISCO BAY REGION,<br><br>       Plaintiffs,<br><br>       v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>       Defendant. | Case No. 3:24-cv-02594-AMO<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S RESPONSE TO PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE**<br><br>Hearing Date:   May 28, 2026<br>Time:          2:00 p.m.<br>Before:        Hon. Araceli Martínez-Olguín<br>Place:         450 Golden Gate Avenue<br>                Courtroom 10 – 19th Floor<br>                San Francisco, CA 94102<br><br>Date Action Filed:  May 1, 2024 |

**INTRODUCTION**

The parties to this case have worked more than eighteen months to negotiate a resolution to this important matter concerning the City and County of San Francisco's ("the City" or "San Francisco") combined sewer system and its effects on the Bay and the Pacific Ocean. In May 2024, the United States and the People of the State of California ("California") (together, "the Government Plaintiffs") sued San Francisco alleging violations of San Francisco's permits issued pursuant to the Clean Water Act ("CWA"), and San Francisco Baykeeper (with the Government Plaintiffs, "the Plaintiffs") intervened mere weeks later. Since then, San Francisco, the Government Plaintiffs, and Baykeeper (together, "the Parties") have held nearly two dozen mediation sessions to negotiate injunctive relief to resolve this complex, multi-party case. As a result of this work, the finish line is in sight. The Parties have reached agreement in principle on the injunctive relief for all major claims brought by the Government Plaintiffs and Baykeeper. *See* Status Report (ECF No. 51) at 2-3.

The Prospective Intervenors—a group of 122 family trusts, individuals, and corporate entities—waited until this critical juncture to intervene. Complaint in Intervention (ECF No. 46) ("Proposed Compl."). If the Prospective Intervenors had an interest in the CWA claims in this litigation, they should have known that in May 2024, when the press extensively covered the Government Plaintiffs filing their Complaint.[1] By waiting until now, the Prospective Intervenors risk derailing the Parties' nearly finished settlement negotiations to pursue private concerns unrelated to the Government Plaintiffs' and non-profit Baykeeper's CWA claims. Moreover, the allegations in their Proposed Complaint evidence Prospective Intervenors are not primarily concerned with the CWA's objective to protect surface water quality. *See* 33 U.S.C. § 1251(a) (objective of the Act is to "restore and maintain the . . . integrity of the Nation's waters"). Instead, they sound primarily in issues outside the gravaman of this case. Specifically, they seek intervention to protect their private property interests in the Marina District and the 17th and Folsom Street area, a goal they have been pursuing for

---

[1] Katherine Monahan, *Amid Long and Costly Legal Battles, SF Urged to Update Wastewater System, Fix Sewage Discharges*, KQED (May 29, 2024) [https://perma.cc/E7B7-2E7F]; *EPA Claims SFPUC Failures Caused Massive Bay Sewage Spills*, S.F. Examiner (May 1, 2024) [https://perma.cc/7DLF-UDZN]; *EPA Sues San Francisco for Allegedly Dumping Billions of Gallons of Sewage into Pacific Ocean, Bay*, ABC7 News (May 2, 2024) [https://perma.cc/LRQ4-FWJY].

more than two years in state court litigation against the City. *See* Proposed Compl. ¶¶ 9-11; *see also* Motion to Intervene (ECF No. 46-1) at 10 ("Motion") (no party "adequately represents Movants' property interests" because "EPA's interest is in *enforcing federal environmental law and protecting receiving waters . . .* [and] does not represent the *private property damage* and *flood protection interests* of affected businesses and homeowners" (emphasis added)).

Despite these concerns, the City does not object to intervention, with certain limitations. Both their Motion and Proposed Complaint make clear Prospective Intervenors are largely focused on flooding issues unrelated to the CWA, and the Court should not permit efforts to seek that kind of relief to go forward, where they are already pursuing similar claims in state court. Notably, the Government Plaintiffs have filed responses evincing similar concerns and seeking similar limitations on intervention. *See* United States' Response at 6-8 (ECF No. 53); California's Response at 1-2 (ECF No. 54). Moreover, in circumstances like these—where the Parties' settlement is nearly complete and the inclusion of new late-in-the-day plaintiffs risks unwinding it—courts have imposed conditions on intervention to avoid such disruption. Consistent with case law discussed below, the City requests that the Court place the following conditions on intervention: (1) require the Prospective Intervenors to modify their Proposed Complaint to limit its allegations and claims for relief to those appropriate in a CWA citizen suit; and (2) limit the Prospective Intervenors' participation to reviewing and objecting to the Parties' forthcoming proposed settlement agreement once lodged. At that point, to the extent that the Prospective Intervenors believe that the Parties' settlement does not resolve any meritorious CWA claims available to them in a citizen suit, they may seek appropriate relief separate from that already obtained by the Government Plaintiffs and Baykeeper. These conditions will ensure the Prospective Intervenors will be heard concerning "the scope and implementation of any [CWA-related] injunctive relief" without delaying or impeding the conclusion of the Parties' near-completed settlement negotiations. Motion at 8.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether, if the Court grants Prospective Intervenors' Motion, the Court should also exercise its equitable authority to impose reasonable limits on the scope of intervention in order to ensure efficient conduct of the proceedings, including by (1) limiting the allegations related to and injunctive relief

sought by Paragraph 45(d) of their Proposed Complaint to relief required to ensure compliance with the CWA, and (2) limiting Prospective Intervenors' participation to reviewing, commenting on, and, if warranted, objecting to the lodged settlement agreement.

## BACKGROUND

### A.    History of This Litigation and Mediation

The Government Plaintiffs filed their complaint in May 2024 alleging that the City's systems for conveying and treating wastewater and stormwater violated the terms of their NPDES Permit, and therefore the CWA, 33 U.S.C. § 1251 *et seq.*, as well as parallel provisions of California law. Compl. (ECF No. 1) ¶ 1. This event received extensive coverage in local press at the time. *See supra* footnote 1. Baykeeper moved to intervene on May 13, 2024, which this Court granted on May 29, 2024. Baykeeper Mot. to Intervene (ECF No. 18); Order (ECF No. 20). On April 9, 2025, the Government Plaintiffs amended their complaint to remove one of their causes of action. Am. Compl. (ECF No. 32).

Recognizing that San Francisco's residents, its combined system, and the waterbodies surrounding the City would all benefit more if the Parties invested in finding solutions rather than litigating, the Parties then sought alternative dispute resolution. The Court has thus entered the Parties' joint stipulations on five occasions to extend the stay of litigation deadlines in this matter to allow them to engage in mediated settlement negotiations. *See* Orders of June 3, 2024 (ECF No. 26), December 9, 2024 (ECF No. 30), April 14, 2025 (ECF No. 34), December 15, 2025 (ECF No. 41), April 14, 2025 (ECF No. 52). As the Parties have explained in their status updates, they have held mediation discussions with the Plaintiffs on 21 occasions so far, Status Report (ECF No. 28); Status Report (ECF No. 33); Status Report (ECF No. 40), and have recently reached agreement in principle as to the injunctive relief on all but one of the Plaintiffs' claims. *See* Status Report (ECF No. 51) at 2.[2]

### B.    Prospective Intervenors' Claims

The Prospective Intervenors' Proposed Complaint asserts three causes of action, each of which mirrors those the Parties have been resolving through mediation since 2024. Their first cause of action

---

[2] These mediation sessions occurred on September 17–18, 2024; October 29, 2024; November 12, 2024; December 3, 2024; March 25, 2025; April 22, 2025; May 16, 2025; June 4, 2025; June 26, 2025; July 8, 2025; August 26, 2025; November 12, 2025; December 8, 2025; March 12, 2026; March 27, 2026; April 6, 2026; April 7, 2026; and April 9, 2026.

CCSF Response to Motion to Intervene;                    3
3:24-cv-02594-AMO

alleges unauthorized discharges of "untreated or partially treated combined sewage and stormwater from the Bayside sewer system in excess of permit limitations and without authorization," in violation the CWA, which corresponds to the first causes of action asserted by the Government Plaintiffs and Baykeeper. *Compare* Proposed Compl. ¶¶ 36-38, *with* Am. Compl. (ECF No. 32) ¶¶ 99-108, *and* Baykeeper Compl. (ECF No. 24) ¶¶ 188-209. Prospective Intervenors' second claim reprises Baykeeper's second cause of action, alleging that discharges from the City's combined sewer system have resulted in conditions in the Bay and Mission Creek that exceed applicable water quality standards. *Compare* Proposed Compl. ¶¶ 39-41, *with* Baykeeper Compl. ¶¶ 217-225 (citing Bayside Permit § V.C.). Finally, Prospective Intervenors' third claim alleges the City has failed to adequately implement combined sewer overflow control measures, including certain operational and long-term control requirements, which parallels both the Government's second claim and Baykeeper's fourth. *Compare* Proposed Compl. ¶¶ 42-44, *with* Am. Compl. ¶ 109-126 ("City has failed to properly operate and maintain all facilities and systems of treatment and control . . . to achieve compliance with the conditions of its NPDES Permits"), *and* Baykeeper Compl. ¶ 236-265 (alleging failures to operate the system consistent with San Francisco's long-term control requirements). For all claims, Prospective Intervenors "seek only injunctive relief." Motion at 8.

## ARGUMENT

To the extent that Prospective Intervenors assert allegations and claims cognizable under the CWA, the City does not object to their intervention. *See* Motion at 7 (citing 33 U.S.C. § 1365(b)(1)(B), which provides for intervention "as a matter of right" if the United States or a state is "diligently prosecuting" an enforcement action in federal court). As a general rule, a third party may intervene so long as they seek to enforce the same "standard, limitation, or order" as the government.[3] And the Proposed Complaint's three CWA claims mirror, at a high level, those raised by Plaintiffs.

---

[3] *See In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods. Liab. Litig.*, 894 F.3d 1030, 1039 (9th Cir. 2018) (interpreting identical language in the CAA); *Cal. ex rel. Reg'l Water Quality Control Bd. v. Int'l Boundary & Water Comm'n*, No. 18cv2050 JM (LL), 2019 WL 1572994, at *3 (S.D. Cal. Apr. 11, 2019) (citizen allowed to intervene as a matter of right because they "seek[] to enforce the same effluent standard or limitation" as the government (citing *Volkswagen*, 894 F.3d at 1039)).

*See generally Int'l Boundary & Water Comm'n*, 2019 WL 1572994, at *3 (granting intervention). However, the City seeks two reasonable conditions on intervention. First, the Prospective Intervenors' proposed complaint should be modified to remove allegations and proposed relief that is improper to a CWA citizens suit. Second, the Prospective Intervenors' role should be limited so that they do not derail the Parties' near-completed settlement negotiations. These guardrails—commonly used by courts in CWA cases—will ensure that the Parties can timely complete complex, multi-year negotiations while ensuring that the Prospective Intervenors have a forum to ensure CWA compliance in their neighborhoods. *See* Motion at 10.

### A.    The Proposed Complaint must be modified to remove allegations and requested relief improper to a CWA citizen suit.

To the extent Prospective Intervenors' claims depart from the Plaintiffs' claims, they do so in alleging facts that cannot form the basis of a CWA violation. Under the CWA, a citizen can only sue to enforce violations of a CWA permit or certain provisions of the statute itself. *See* 33 U.S.C. § 365(a). Unlike the Plaintiffs' complaints, Prospective Intervenors' Proposed Complaint fails to allege a violation of a specific permit term, instead focusing on allegations related to "discharges" that have allegedly damaged their property and surrounding areas. For example, they allege "sewage discharges [in]to streets[ and] public rights of way," Proposed Compl. ¶ 21, "discharges [that] have occurred in drainage basins serving the Marina and 17th/FOLSOM neighborhoods, causing sewage to enter streets, parks, [and] public rights-of-way," *id.* ¶ 37, and that "[a]s a result of these discharges, Plaintiff-Intervenors have been exposed, and remain exposed, to sewage flooding and contamination affecting their homes, businesses, and surrounding public spaces," *id.* ¶ 38. However, streets, public rights of way, parks, homes, businesses, and public spaces are not waters of the United States. And, unsurprisingly, the CWA protects *water*, not land; the statute does not apply if a substance has not been put "[in]to navigable waters." *Waterkeeper All., Inc. v. EPA*, 399 F.3d 486, 505 (2d Cir. 2005); *Resurrection Bay Conservation All. v. City of Seward, Alaska*, 640 F.3d 1087, 1093 (9th Cir. 2011) (the Act reaches only actual discharges to surface water). Consistent with this commonsense limitation, courts reject CWA claims where pollutants are released onto land or into buildings but do not reach a waterbody. *See, e.g.*, *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d

719, 758–62 (N.D. Cal. 2011) (denying summary judgment on CWA claim where evidence showed sewage overflows did not reach actual surface waters); *accord 26 Crown Assocs., LLC v. Greater New Haven Reg'l Water Pollution Control Auth.*, No. 3:15-cv-1439 (JAM), 2017 WL 2960506, at *8-9 (D. Conn. July 11, 2017). These allegations therefore cannot support Prospective Intervenors' causes of action, and they have no bearing on proving a CWA violation. Prospective Intervenors' improper focus also infects their requested relief. They seek an order "to implement remedial measures sufficient to prevent sewage discharges, overflows, and backups affecting the Marina and 17TH/FOLSOM neighborhoods . . . necessary to protect Plaintiff-Intervenors' homes, businesses, and surrounding public areas." Proposed Compl. ¶ 45(d).

For the proposed complaint's allegations that do not give rise to a CWA claim, such allegations should not be allowed to go forward. *E.g.*, Proposed Compl. ¶¶ 21, 37, 38, 43. Nor should the Prospective Intervenors be allowed to seek injunctive relief unavailable under the CWA. *See id.* ¶ 45(d). Case law supports such limitations. *See, e.g.*, *United States v. Blue Lake Power, LLC,* 215 F. Supp. 3d 838, 844 (N.D. Cal. 2016) (intervenor limited to only its Clean Air Act claims and ordered to modify proposed complaint to remove other allegations and claims). Should the Court permit intervention, the City asks that the Court order Prospective Intervenors to modify their Proposed Complaint before filing to allege only facts relevant to a CWA claim, and to limit relief similarly. If not, the City reserves the right to move to dismiss substantial portions of Prospective Intervenors' complaint for failure to state claims on which the Court may grant relief.

**B.    Prospective Intervenors should be limited to reviewing, commenting on, and, if warranted, objecting to the forthcoming settlement agreement.**

Prospective Intervenors consist of more than 120 Parties—among them, family trusts like the Alioto Family Trusts, and businesses like Rainbow Grocery and Everlane—with unique and individuated property interests. San Francisco thus also asks that the Court take steps to prevent Prospective Intervenors' late arrival from delaying or disrupting the Parties' near-final, years-long settlement efforts. The City seeks these limits because a late intervention adding over 100 hundred new plaintiffs with unique interests could otherwise thwart the Parties' near-completed settlement negotiation. Although the City is not challenging the Motion as untimely, Rule 24's timeliness

requirements demand a third party to "intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *W. Watersheds Proj. v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (citation omitted). Courts, moreover, often deny dilatory intervention motions specifically out of recognition that they can prejudice the existing parties by disrupting delicate or near final settlement negotiations.[4]

The City's request is well within the Court's equitable discretion: district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action "even when the intervenor has a statutory right to intervene." *Farmer v. EPA*, 759 F. Supp. 3d 101, 111 (D.D.C. 2024); *Blue Lake Power*, 215 F. Supp. 3d at 844 (to prevent complicating settlement, intervernor limited to participating in judicial review of lodged consent decree); *Forest Cnty. Potawatomi Cmty. v. United States,* 317 F.R.D. 6, 15 (D.D.C. 2016) ("conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation"); *see also* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment (noting that a court may impose appropriate conditions or restrictions on an intervenor to ensure the efficient conduct of the proceedings); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right."). Limiting Prospective Intervenors' role to reviewing, commenting on, and, if warranted, objecting to the proposed settlement agreement is not only the appropriate role for intervenors here,[5] but it will also ensure they "cannot stop other litigants from resolving their dispute by withholding [their] consent to a decree" because "otherwise, one party could hold the other parties hostage in ongoing litigation." *Sierra Club v. North Dakota*, 868 F.3d 1062, 1066 (9th Cir. 2017) (discussing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478

---

[4] *See, e.g., Cnty. of Orange v. Air Cal*., 799 F.2d 535, 538 (9th Cir. 1986) (denying intervention motion filed after parties had reached proposed settlement and that threatened to undo five years of protracted litigation); *Aleut Corp. v. Tyonek Native Corp.,* 725 F.2d 527, 530 (9th Cir. 1984) (affirming denial of intervention "on the eve of settlement following several years of litigation" and noting to permit intervention could have prejudiced the rights of the parties impermissibly); *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects., Inc.,* 309 F.3d 1113, 1119 (9th Cir. 2002) (denying intervention motion filed after parties had stipulated to consent decree and noting parties would have been prejudiced by the intervention).

[5] *See United States v. Metro. Water Reclamation Dist. of Greater Chicago*, 792 F.3d 821, 825 (7th Cir. 2015) (noting that an intervenor "private party is not supposed to be a full-fledged independent litigator" and that their role is to "object to a proposed settlement" and "appeal if the intervenor thinks that the government has accomplished too little").

U.S. 501, 528-29 (1986)). Thus, federal courts routinely structure intervenors' participation in EPA enforcement actions so that they cannot prevent a settlement agreement from being lodged by allowing them to review and, if appropriate, object to the settlement. *See, e.g., Metro. Water Reclamation Dist. of Greater Chicago*, 792 F.3d at 825; *United States v. Ketchikan Pulp Co.*, 430 F. Supp. 83, 85 (D. Alaska 1977) ("[i]f such a citizen were allowed to block entry of a consent decree merely by objecting to its terms it would wreak havoc upon government enforcement actions"). Providing Prospective Intervenors with the opportunity to review and potentially object to the settlement after it is lodged will promote judicial efficiency and avoid prejudice to the Parties who have been mediating for over a year and a half and have nearly finished reaching a significant and complex settlement agreement.

## CONCLUSION

Accordingly, the City respectfully requests that the Court: (1) condition intervention on modifications to the Proposed Complaint to limit allegations and claims for relief to those appropriate in a CWA citizen suit; and (2) limit the Prospective Intervenors' participation to reviewing, commenting on, and potentially objecting to the Parties' proposed settlement agreement once lodged.

Dated:  April 15, 2026

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
SARA J. EISENBERG
Chief of Complex & Affirmative Litigation
DAVID S. LOUK
ESTIE M. KUS
Deputy City Attorneys

ANDREW C. SILTON
JOSHUA H. VAN EATON

By:    */s/ David S. Louk*

*Attorneys for Defendant*
CITY AND COUNTY OF SAN FRANCISCO